**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>REUVEN PERLMAN,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Case No. SAG-15-1620</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MAYOR AND CITY COUNCIL</td><td>*</td><td></td></tr>
<tr><td>OF BALTIMORE,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reuven Perlman ("Mr. Perlman") sued the Mayor and City Council of Baltimore City ("the City"), alleging religious discrimination and retaliation in violation of 42 U.S.C. § 2000e, *et seq.*  *See* [ECF No. 1].   Presently pending is Defendant's Motion to Dismiss for Failure to State a Claim, [ECF No. 22].   Mr. Perlman, who appears *pro se*,[1] has not filed an Opposition in response to the instant motion, and the matter is ripe for the Court's resolution.[2] For the reasons set forth herein, the City's Motion to Dismiss will be GRANTED in part, and DENIED in part.

---

[1] While Mr. Perlman presently appears before the Court *pro se*, he was represented by counsel at the time his initial and amended Complaints were filed.

[2] The City filed the pending Motion to Dismiss for failure to state a claim on September 24, 2015.  *See* [ECF No. 22].  On October 7, 2015, however, before Mr. Perlman's response in Opposition to the instant motion was due, Mr. Perlman's attorney withdrew from the case.  *See* [ECF No. 23].  The case was stayed for thirty days to give Mr. Perlman the opportunity to locate new counsel.  [ECF No. 25].  Because Mr. Perlman did not enter the appearance of new counsel within the thirty-day stay, the Court informed Mr. Perlman that he would therefore be proceeding in the case *pro se*.  [ECF No. 27].  Mr. Perlman's Opposition to the instant motion was due on November 30, 2015.  *Id.* Despite Mr. Perlman's failure to file either a timely Opposition or a motion for extension of time to file an Opposition, the City filed a Response to Mr. Perlman's Failure to Oppose the City's Motion to Dismiss.  *See* [ECF No. 28].

## I.      BACKGROUND

In May, 2013, Mr. Perlman was hired for the position of "Parking Control Agent I" with the Baltimore City Department of Transportation.  Pl.'s Am. Compl. ¶ 1.  Mr. Perlman was terminated on September 16, 2013, prior to the end of his probationary training period for the position.  *Id.* at ¶ 66.  Mr. Perlman alleges that, during the probationary training period, he was told for the first time that the job requirements for Parking Control Agent I included Saturday availability.  *Id.* at ¶ 18.  On May 20, 2013, during his training, Mr. Perlman informed "Ms. Jane Kayne"—ostensibly a member of the City's training staff—that he was not available to work on Saturdays during the day because he is an observant Jew.  *Id.* at ¶¶ 14, 19.  He was told that this arrangement would "not [be] a problem."  *Id.* at ¶ 21.  However, when he submitted the paperwork to effectuate a permanent schedule change, his request was denied.  *Id.* at ¶ 31. After receiving notice of this initial denial, on August 21, 2013, Mr. Perlman held a meeting with two supervisors: Sergeant Tamika Avent, and Colonel Yolanda Cason, Safety Chief.  *Id.* at ¶ 32. He informed his supervisors during the meeting that "given the denial, his attorney would be calling Defendant's counsel."  *Id.* at ¶ 33.  Upon hearing this threat, Colonel Cason "said words to the effect of, 'ok forget it.'"  *Id.* at ¶ 35.  Though no permanent agreement was reached as to Mr. Perlman's religious accommodation, Mr. Perlman did not perform work on Friday evenings and Saturday nights and incurred no consequences.  Pl.'s Am. Compl. ¶¶ 36-38.

On August 22, 2013, Mr. Perlman's immediate supervisor for the first time criticized his "ticket writing methods."  Pl.'s Am. Compl. ¶ 43.  Mr. Perlman alleges that he told his supervisor that his methods were compliant with the directions he had been given during his training.  *Id.* at ¶¶ 44-46.  He also alleges that he was "censured" by his supervisor for "mentioning his training officer's name" in the discussion of his ticket writing methods, and that he was told that "such action was insubordination."  *Id.* at ¶¶ 47, 48.

Mr. Perlman's second request for a permanent schedule change due to religious accommodation was denied on August 28, 2013. *Id.* at ¶ 50. According to Mr. Perlman, he was told that his request was denied because it would create an "undue hardship" on the City. *Id.* Mr. Perlman was, however, granted unpaid leave for the Jewish holidays in September. Pl.'s Am. Compl. ¶¶ 52, 53.

On September 4, 2013, Mr. Perlman was instructed not to wear suspenders. Pl.'s Am. Compl. ¶ 55. Prior to that date, he had not been disciplined for wearing suspenders. *Id.* at ¶ 56. Mr. Perlman was given a poor performance evaluation on September 10, 2013. *Id.* at ¶ 58. He alleges that he was not provided with proof of his poor performance and had not been counseled as to his poor performance prior to that date. *Id.* at ¶¶ 59, 60. On September 11, 2013, Mr. Perlman was told that he would not be receiving a hand held ticket scanning device, which he had used during his training, for use in his position as a Parking Control Agent I. *Id.* at ¶¶ 62, 63. Mr. Perlman contends that his supervisor publicly provided a false explanation as to the reason for this revocation. *Id.* at ¶¶ 64, 65. Mr. Perlman was terminated on September 16, 2013. *Id.* at ¶ 66.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of his claim that would entitle him to relief. *See* Fed. R. Civ. P. 12(b)(6); *McIntyre-Handy v. APAC Customer Servs., Inc.*, No. 4:04-CV-83, 2004 WL 5281140, at *1 (E.D. Va. Oct. 13, 2004). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most

favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Federal Bureau of Investigation*, 1 F.3d 255, 256 (4th Cir.1993)).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alternations omitted).  It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 678 (internal quotations and citation omitted).   If a plaintiff is proceeding *pro se*, as Mr. Perlman is here, the complaint is held to less strict standards.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Such a case "should only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 520-21 (citations and internal quotation marks omitted).

## III.    DISCUSSION

### A.  Mr. Perlman's Status-Based Discrimination Claim

Mr. Perlman first alleges a claim for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.SC. § 2000e, *et seq.*  Pl.'s Am. Compl. 7.  Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion.".  42 U.S.C. § 2000e-2(a)(1).

To state a claim for religious discrimination under Title VII, a plaintiff may offer direct evidence that his employer discriminated against him, *see Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004),  or he may offer evidence of a *prima facie* case of discrimination by showing that he is a member of a protected class, that he was meeting the reasonable expectations of his employer, that he suffered an adverse employment action, and that he was treated differently from similarly situated employees outside the protected class.  *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Notably, in *Swierkiewicz v. Sorema*, the Supreme Court held that "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination . . . to survive a motion to dismiss," as requiring a plaintiff to do so would impose a "heightened pleading standard" at odds with the liberal pleading requirements mandated by Federal Rule of Civil Procedure 8(a)(2).  534 U.S. 506, 512, 515 (2002); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought.").

Following *Swierkiewicz*, the Court clarified that although a plaintiff is not required to plead facts to support a *prima facie* claim for employment discrimination, "a plaintiff's obligations to provide the 'grounds of his entitlement to relief' requires more than . . . a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts are not "bound to accept as true a legal conclusion couched as a factual allegation.").  Thus, while Mr. Perlman is not required to plead facts to support a *prima facie* claim of discrimination, and while the Court will not test the facts as pled against such a claim, it

5

must still be determined whether his Amended Complaint comports with the "ordinary rules for assessing the sufficiency of a complaint," *see Swierkiewicz*, 534 U.S. at 511, by pleading facts to plausibly support his claim of discrimination. An examination of the Amended Complaint reveals that it does not.

To survive the instant motion to dismiss, Mr. Perlman is required to have alleged facts in support of his discrimination claim to show that the City terminated him and subjected him to disparate treatment *because of* his religion. *See* 42 U.S.C. § 2000e-2(a)(1); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015); *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 520 (4th Cir. 2005) (holding that direct evidence of discrimination "must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.") (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citation and internal quotation marks omitted)); *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 430 (D. Md. 2013) ("Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action.").

While he alleges that the City terminated him, and that he is Orthodox Jewish, Mr. Perlman does not allege facts sufficient to claim that *the reason for* his termination was because he is Orthodox Jewish. Mr. Perlman asserts that "Defendant's decision to terminate Plaintiff was because of Plaintiff's religious beliefs," as, "at all relevant times," Defendant "was aware that Plaintiff was Orthodox Jewish." Mr. Perlman's allegation that the City was "at all times aware" that he was Orthodox Jewish in no way directly proves that any employment action taken by the City against Mr. Perlman was related to his religious beliefs. Mere awareness of a plaintiff's membership in a protected class is not sufficient evidence of discrimination.

Mr. Perlman also alleges that his "undue difficulty" in obtaining a religious accommodation was "a direct and proximate cause by [sic] the Defendant's unjustified discrimination against [him] because of the fact that he is Orthodox Jewish." Pl.'s Am. Compl. ¶¶ 75, 76. This allegation, too, exemplifies the Amended Complaint's practice of merely labeling the City's actions as discriminatory without providing any factual support. Indeed, the facts as pled support the opposite conclusion. After Mr. Perlman's initial request for a permanent schedule change to accommodate his religious beliefs was denied, he informed two supervisors, Sergeant Tamika Avent and Colonel Yolanda Cason, that "his attorney would be calling Defendant's counsel." *Id.* at ¶¶ 31-33. According to Mr. Perlman, in response to his threats, Col. Cason stated, "Ok, forget it," and the City continued to employ Mr. Perlman despite no agreement being reached about his religious accommodation. *Id.* at ¶¶ 35-37. Mr. Perlman freely admits that the City "did not terminate him for being unable to work" between Friday and Saturday evenings, and that he continued to work for the City until his eventual termination. Pl.'s Am. Compl. ¶¶ 31-37. His assertion that "Defendant's decision to terminate Plaintiff was because of Plaintiff's religious beliefs" is thus belied by the facts as pled.

Further, in support of his discrimination claim, Mr. Perlman contends that the City "willfully discriminated against [him] on account of his religion with respect to its decision to treat [him] different from other employees." *Id.* at ¶ 75. However, this conclusory claim is unsupported by any facts in the Amended Complaint. Apart from stating that he was "singled out by not receiving a hand held ticket scanner [for the first time]" on September 11, 2013, *see id.* at ¶¶ 62, 63, Mr. Perlman fails to allege any way in which he was treated differently from other employees. His not receiving a hand held ticket scanner is insufficient to show discriminatory disparate treatment because, despite alleging that he was "the only Jewish

probationary employee" in his training group, *see id.* at ¶ 66, he fails to provide any additional facts to support an inference of discrimination or to show that his being the only Jewish probationary trainee was the reason for his not receiving a hand held scanner.  He fails to allege, for example, the religion of any of the relevant persons involved in the decision to revoke his hand held scanner privileges, the basis for his allegation that he was the only Jewish probationary trainee, whether similarly situated employees were also not given hand held scanners, whether his position remained open or was filled following his termination—and, if filled, whether by another Jewish person or not—or to otherwise allege facts supporting his assertion that this decision was influenced by his religion.  *See Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 335 (4th Cir. 2013).

While his allegation that he was the only Jewish trainee and did not receive a scanner may be *consistent* with plausible discrimination, it does not alone support a reasonable inference that any of his supervisors were motivated by bias when unaccompanied by any facts to substantiate his claim.  *See Iqbal*, 556 U.S. at 678.  Mr. Perlman can only speculate that the persons who received hand held scanners were not better qualified to do so, and, by failing to allege any facts sufficient to support his claim of discrimination, he asks the Court to engage in such speculation as well.  Under *Twombly* and *Iqbal*, however, engaging in speculation to fill in these gaps is improper.  *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); *Twombly*, 550 U.S. at 557.

Finally, Mr. Perlman alleges that his follow-up request for permanent religious accommodation was denied on the basis that such accommodation would be an "undue hardship" on the City, but contends that this explanation was mere pretext because "Defendant never

terminated Plaintiff for being unable to work from Friday evening until Saturday night because same was not unduly burdensome for Defendant." Pl.'s Am. Compl. ¶ 38. Under Title VII, employers are not liable for religious discrimination for failure to make a reasonable accommodation for an employee's religious beliefs where the accommodation would constitute an "undue hardship." *See* 42 U.S.C. § 2000e-3(a). The Supreme Court has held that an undue hardship is constituted where the accommodation results in "more than a *de minimis* cost to the employer." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) ("To require [the employer] to bear more than a *de minimis* cost in order to give [the employee] Saturdays off is an undue hardship."). Here, Mr. Perlman fails to allege any facts to support his claim that a permanent schedule change would not have resulted in more than a *de minimis* cost beyond his conclusory assertion that the change would not have created an undue burden. As to his claim that the denial of his permanent schedule change was mere pretext for discrimination, then, Mr. Perlman's Amended Complaint again requires the Court to engage in inappropriate speculation and fill in the factual gaps. The Court will not do so, and Mr. Perlman's discrimination claim, contained in Count I of the Amended Complaint, is therefore dismissed.

**B. Mr. Perlman's Retaliation Claim**

Count II of Mr. Perlman's Amended Complaint alleges a claim for retaliation under 42 U.S.C. § 2000e-3(a), which prohibits employers from retaliating against employees who oppose unlawful employment practices, such as prior discrimination. 42 U.S.C. § 2000e-3(a). Specifically, Mr. Perlman asserts that his termination was "motivated by the intent to retaliate against him for his religious accommodation request." Pl.'s Am. Compl. ¶815. As with his claim for status-based discrimination, Mr. Perlman fails to allege any direct evidence to substantiate his statements. However, he has alleged facts sufficient to support a plausible

inference that he was terminated in retaliation for engaging in a protected activity and that the City is liable under Title VII for retaliation.

Section 3(a) of Title VII, which addresses retaliation claims, references "oppos[ition] to any practice," or "participation in any manner in an investigation, proceeding, or hearing" to explain what constitutes a protected activity. *Id.* In considering whether a plaintiff's action constitutes "opposition activity" that would be protected, the Fourth Circuit has stated that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also id.* ("Whether an employee has engaged in protected opposition activity, turns upon balancing 'the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'") (ellipsis in original).

Construing Mr. Perlman's Amended Complaint liberally, there are two apparent facets of Mr. Perlman's religious accommodation request that could be deemed protected activity: first, making the request generally, and second, threatening to have his attorney contact the City's counsel when his initial request was denied. *See* Pl.'s Am. Compl. ¶ 33. As to the first facet of his request, he argues that "[t]he actions taken against [him] were motivated by the intent to retaliate against him for his religious accommodation request." Pl.'s Am. Compl. ¶ 81. Mr. Perlman's making a religious accommodation request is not protected activity. The making of such a request neither "oppos[es] any practice" of the City, nor constitutes "participation in an investigation, proceeding, or hearing" to do with any Title VII violations committed by the City. *See Laughlin*, 149 F.3d at 259. Nor does filing a request for a permanent schedule change on

religious grounds constitute "utilizing informal grievance procedures or staging informal protests" to call awareness to an employer's discriminatory activities.  *See id.*

While simply making a religious accommodation request may not constitute a protected activity, however, Mr. Perlman's threat to involve his attorney upon the initial denial of his request does.  Although "not every letter from an attorney to the eventual defendant in a Title VII action amounts to a protected activity," *see Currie v. Arthur*, No. 1:11-CV-892, 2012 WL 1715390, at *8-9 (E.D. Va. May 15, 2012), and although Mr. Perlman ultimately did not have his attorney contact the City's counsel because the City permitted him to continue avoiding work on the Jewish Sabbath, the Fourth Circuit's overall preference for liberal construction of what constitutes "opposition activity" mandates this finding.

Under the Fourth Circuit's interpretation of "opposition activity," an employee is protected when he opposes "not only . . . employment actions actually unlawful under Title VII but also employment actions he reasonably believes to be unlawful." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).  The employee "must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." *Id.* at 406-07; *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).  On the instant facts, it is conceivable that Mr. Perlman threatening to contact his attorney following the initial denial of his religious accommodation request indicates an objectively reasonable belief that the City's act of denying his request violated Title VII.  Mr. Perlman  can therefore be deemed to have engaged in protected activity in informing his supervisors that, in light of the denial of his religious accommodation request, his attorney would be contacting the City's counsel.

Moreover, Mr. Perlman's providing the dates of his protected activity and his termination, which reflects temporal proximity between the two events, coupled with his specific allegations that the City took several unfounded warning and punitive actions against him after he threatened to call his attorney, indicate that he has sufficiently pled facts to support a retaliation claim. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that "mere" temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action must be "very close" to show causality). For example, Mr. Perlman asserts that on August 22, 2013—allegedly one day after he engaged in the protected activity—his immediate supervisor criticized his ticket writing methods for the first time. *Id.* at ¶ 44. In response, Mr. Perlman informed his supervisor that he was writing tickets "as per the methods taught to him by his training instructor, Sergeant Christian." *Id.* at ¶ 44. Mr. Perlman alleges, however, that he was "then censured by [his immediate supervisor] for mentioning his training officer's name in the aforesaid discussion," and was told that "such action was insubordination," despite his never having been formally disciplined for insubordination related to that conversation. *Id.* at ¶¶ 47, 48.

Mr. Perlman also contends that on September 4, 2013, he was "instructed not to wear suspenders" for the first time, despite having worn suspenders prior to that date "without issue." *Id.* at ¶¶ 55, 56. He notes that on September 10, 2013, he was given a "very poor performance evaluation," despite "no proof of poor performance" being provided on that date, and despite his "never [having been] counseled with respect to poor performance" prior to September 10. *Id.* at ¶¶ 58-60 Finally, Mr. Perlman alleges that on September 11, 2013, for the first time, he was not given a hand held ticket scanner. *Id.* at ¶ 62. When other trainees and agents asked his immediate supervisor if Mr. Perlman would be receiving a scanner, his supervisor stated that Mr.

Perlman would not be receiving one because he had not been working for as long as the other probationary employees.  *Id.* at ¶ 64.  Mr. Perlman claims that when he "reminded [his supervisor] that he had been there just as long or longer than the other probationary employees who received the device," his supervisor responded, "'That being said you're not getting one.'" *Id.* at ¶ 65.  Mr. Perlman's assertion that his supervisor provided a false explanation for the revocation of his scanner implies an argument that this punitive act was baseless, which further contributes to an inference of causation between his protected activity and his termination.  *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147 (2000).

Construed liberally, these facts show that it is plausible that the criticism Mr. Perlman faced was illegitimate and unrelated to his work performance, and was being leveled against him to create pretextually legitimate grounds for his otherwise baseless firing, which bolsters an inference that his ultimate termination was mere retaliation for his protected activity sufficient to "nudge his claim" for retaliation "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.  Because Mr. Perlman has alleged facts adequate to state a claim of retaliation, the City's motion to dismiss is DENIED as to Count II.

## IV.    CONCLUSION

For the reasons set forth above, the City's Second Motion to Dismiss, [ECF No. 22], is GRANTED in part as to Count I of the Amended Complaint, and DENIED in part as to Count II of the Amended Complaint.


Dated: February 18,  2016                                  _____/s/_____
                                                                      Stephanie A. Gallagher
                                                                      United States Magistrate Judge